UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    Case No. 8:04-cr-592-T-30TGW

MICHAEL A. HORNE
_____

ORDER

This cause came on for consideration of Defendant's Renewed Motion for Judgment of Acquittal and/or Motion for Post-Verdict Judgment of Acquittal (D-76), and the Government's opposition thereto (D-79).

To put this matter in context, on April 18, 2005, the jury trial in this case commenced. On April 21, 2005, the jury found Defendant guilty of conspiracy to possess with the intent to distribute crack cocaine, possession with the intent to distribute crack cocaine, possession with the intent to distribute crack cocaine within 1000 feet of a school, felon in possession of a firearm, and possession of a firearm during the commission of a felony in violation of 21 U.S.C. §§ 846, 841(a)(1) and 860(a), 18 U.S.C. § 2, and 18 U.S.C. § 922(g)(1). (Dkt. 72.)

Defendant timely filed his motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c). Defendant contends that: (1) the Government failed to offer any independent evidence that the Defendant conspired with any other known or unknown persons to commit an illicit act; (2) there was insufficient evidence to

sustain a conviction for the offense of possession of crack cocaine with the intent to distribute or to distribute it within 1,000 feet of a school; (3) there was insufficient evidence with regard to the firearm convictions; (4) the Government failed to prove corpus delicti; and (5) the Government failed to establish venue. With the exception of the final one, all of these arguments were raised by Defendant in a written motion filed just prior to the close of the Government's case-in-chief.

Rule 29 provides in relevant part that a court "[s]hall order the entry of judgment of acquittal ... if the evidence is insufficient to sustain a conviction of such offense or offenses." Fed. R. Crim. P. 29. "In considering a Rule 29 Motion for Judgment of Acquittal, the trial court is required to determine whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in the jury's verdict, United States v. Brand, 775 F.2d 1460 (11th Cir. 1985), a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987) (citing United States v. Cole, 755 F.2d 748 (11th Cir. 1985)).

As indicated, Defendant previously raised at trial his first four arguments with regard to the sufficiency of the evidence. The Court denied his motion for judgment of acquittal. Now, after viewing the evidence in the light most favorable to the Government,

and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, the Court again finds that there was sufficient evidence from which a reasonable jury could find the Defendant guilty beyond a reasonable doubt of Counts One and Five of the Indictment.

Specifically, at trial, the Government presented evidence that on May 13, 2004, members of the Manatee County Sheriff's Office were present at 3314 East 5th Street Court in Bradenton, Florida, to execute a search warrant. Prior to executing the warrant, Detective Rich Murray established surveillance of the residence. He observed Terrance Johnson drive away from the house in his vehicle. Approximately thirty minutes later, Defendant and Kelvin Martin (a/k/a "Cut") arrived at the house in Black Toyota Avalon. Defendant, who was driving the vehicle, backed it into the carport. Defendant and Martin exited the vehicle and stood in front of it. Approximately twenty minutes later, Johnson returned to the residence and met with Defendant and Martin. All three men entered the home together.

The MCSO search team then executed the warrant. Upon a search of the home, the team found four individuals: Johnson, who had tried to flee from the home, Martin, Taurius Harrison, and Defendant. All four persons were secured and were read the search warrant.

Prior to the actual search of the home, MCSO Detective Pollock

placed his canine inside the Toyota Avalon and the dog alerted on a black bag hanging on the back of the passenger seat headrest. A search of the bag revealed five bags of powder cocaine weighing approximately 290 grams.

While Detective Pollock was conducting his canine-assisted search, Defendant asked to speak with Detective Murray. He also requested to speak with Detective Pollock, with whom he was familiar. After having been given his *Miranda* rights and while waiting for Detective Pollock, Defendant told Detective Murray that he had 5 ounces of cocaine behind the passenger seat of his car. Defendant explained that he had been getting a haircut at Martin's home while Johnson was present and that Johnson asked him to bring the cocaine to Johnson's house. Defendant stated that Johnson was going to pay him $1,000 to transport the cocaine to Johnson.

Thereafter, when Detective Pollock approached Defendant, Defendant stated, "You gotta get me out of this." He also said, "They put that stuff in my car." Detective Pollock responded that he could not work with Defendant because Defendant was on Federal probation.

Also during the execution of the search warrant, MCSO Detective Bartholomew, who was positioned in front of the home, noticed a firearm wedged between the driver's seat and the center console of the Toyota Avalon. He instructed Detective Barnett to remove the firearm. Upon doing so, Detective Barnett found the

firearm, which was determined to be a Star .9mm caliber pistol, model Ultrastar, serial number 2125958, which was manufactured in Spain and imported into the United States, to be loaded with a round in the chamber.

Thereafter, Captain Bartholomew spoke to Defendant about the firearm and the cocaine located in the Toyota Avalon. Defendant told Captain Bartholomew that the gun was loaded and that he owned it "for awhile," and while he did not know the brand, he knew it was "a .9mm." Defendant also told Captain Bartholomew that Johnson paid him $1,000 to bring the cocaine to Johnson's house. Upon a search of Johnson's person, the detectives located $1183 in cash.

Thereafter, Defendant and Johnson were placed in a patrol car and engaged in a conversation which was recorded by a device that Detective Murray had placed in the patrol car beforehand. During the conversation, Defendant said made incriminating statements including, "Man, why did I even bring that shit with me, man?" He also told Johnson that "all that shit was mine" and that Martin was not aware that "it was in there."

Finally, at trial the Government introduced evidence that the residence in question is located approximately 235 feet from school property and approximately 601 feet from the actual buildings on the property.

While in the instant motion, Defendant once again argues that his confession must be corroborated to sustain his conviction and

5

that no evidence corroborates Defendant's confession, as the Court previously found after the close of the Government's case-in-chief, there is sufficient corroborating evidence. In this regard, Defendant told detectives that he was at Calvin Martin's house getting a haircut and that Johnson asked him to transport cocaine to his residence and, furthermore, that Johnson was going to pay him $1,000. Defendant also told Detectives that he had five ounces of cocaine in his car behind the passenger seat headrest. He admitted to owning the firearm and identified it as a .9mm.

The evidence at trial demonstrated that Defendant had control and was the driver of Toyota Avalon. Upon the seizure of the car, Defendant signed the necessary paperwork and requested the remainder of the keys. Additionally, a search of the car revealed five bags of cocaine in a pouch behind the passenger side headrest where the Defendant had told the detectives the cocaine was located. Also, detectives found a fully loaded firearm in the car in full reach of Defendant on the driver's side of the center console. Detectives confirmed that the firearm was a .9mm, just as Defendant had identified it. Moreover, upon a search of his person, detectives found Johnson had $1183 in cash in his wallet.

Finally, the statements made by Defendant to Johnson while in patrol car round out the corroborating evidence. For instance, Defendant referred to the gun in his car and then stated, "Man, why

did I even bring that shit with me, man?" He also stated that he had to let "Cut" (referring to Martin) go and that, " I said all that shit was mine. He didn't know it was in there. Had to let him go...." These statements do not constitute a confession as the detectives were not present and Defendant thought he was speaking privately to Johnson. Given the foregoing, Defendant's claims with regard to sufficiency of the evidence as to Counts One through Five are denied.

Defendant also contends that the Government failed to establish venue and, as such, his conviction must be reversed. Notably, Defendant first raised this issue after the close of the presentation of evidence by both the Government and the Defendant, after the parties had given their respective closing arguments and rebuttal, and after the Court had read the jury instructions to the jury. At that point, the Court, as is its usual practice, called counsel to the bench to see if there were any objections to the instructions as they had been read by the Court. At that time, counsel for Defendant first questioned whether the Government had offered evidence to prove venue. The Court found that the argument was untimely.

At 11:41 p.m. that same evening, counsel for Defendant electronically filed a written motion for judgment of acquittal for failure to establish venue. (Dkt. 69.) The following morning, when counsel was assembled to hear a question from the jury,

counsel for Defendant did not bring the matter to the Court's attention. The Court did not learn of the written motion until approximately 11:30 a.m. on April 21, 2005, at which point the Court had already been informed by the court security officer that the jury had reached a verdict. The Court delayed taking the verdict to research the issue and the cases cited by defense counsel. The Court then heard oral argument regarding the motion.

During oral argument, the Government argued that Defendant's claim regarding venue had been waived because, had it been brought at an appropriate time, the Government could have called a witness to address whether the city of Bradenton is in the Middle District of Florida. It further argued that it had established venue through a number of witnesses who testified regarding the address of the residence searched and that it is located in Bradenton, Florida, which is located in Manatee County. The Government then urged that the Court could take judicial notice that Manatee County is located in the Middle District of Florida.

After hearing argument, the Court issued an exhaustive oral ruling finding that the motion with regard to venue was untimely. The Court took judicial notice that Manatee County and the city of Bradenton are located in the Middle District of Florida. The Court found that the Government proved by a preponderance of the evidence that venue was proper. Specifically, the Court noted that the evidence in the case affirmatively referred to the City of

Bradenton as the *locus delicti* of the house and the elementary school and that the detectives and officers involved in the search were employed by the Manatee County Sheriff's Office. The Court further noted that no area outside the Middle District of Florida was ever referred to or suggested as a locus of the activity charged. The Court therefore concluded that the jury could reasonably find venue was in the Middle District of Florida.

The Court denied the Government's request that the jury be instructed that the Court had taken judicial notice that the city of Bradenton and Manatee County are in the Middle District of Florida. The Court reasoned that such information would not be of any benefit or assistance to the jury in determining Defendant's guilt or innocence.

In his renewed motion, Defendant again contends that as he raised the issue of venue at the close of jury instructions but before the jury rendered a verdict, his objection was timely. He further argues that the Court's taking of judicial notice of venue does not save the Government's failure to establish it. Defendant further argues that he was not given the opportunity to be heard on the propriety of taking judicial notice and that it would have been improper to instruct the jury regarding venue after the jury had already reached its verdict.

The Court has reviewed Defendant's arguments and the authority he cites in support thereof and finds no basis to change its ruling

9

that Defendant waived the issue of venue. Furthermore, even assuming Defendant did not waive the issue of venue, the Court finds that there is no basis to change its ruling that the Government proved by a preponderance of the evidence that the crimes charged in the Indictment occurred in the Middle District of Florida.

The Eleventh Circuit in United States v. Males, 715 F.2d 568 (11th Cir. 1983), addressed a similar venue issue. There, the defendant challenge the trial court's denial of his motion for judgment of acquittal for failure to introduce sufficient evidence at trial to establish venue. The Eleventh Circuit explained that the standard of review with regard to a claim of improper venue is "whether, reviewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in favor of the jury verdict ... the Government proved by a preponderance of the evidence" that the crimes charged occurred within the Southern District of Florida. Id. at 569 (citations omitted). That burden can be met through direct or circumstantial evidence. Id.

The Males court found that while there was no direct testimony that the offenses took place in Dade County, Florida, as alleged in the indictment, there were a sufficient number of references to the City of Miami from which the jury could have inferred proper venue. Id. at 570. The Court then noted that it could take judicial

notice that Miami is in Dade County, Florida.[1] Id. at 570 n. 2 (citation omitted).

In this case, the Government presented testimony regarding the actual physical address of the residence in question and that such residence was located in Bradenton, Florida. There was also testimony regarding the location of the school which is approximately 600 feet from the house in question. Furthermore, there were numerous mentions of Manatee County. Given the foregoing, the Court confirms its previous finding that the jury could have inferred proper venue.

Finally, the Court notes that defense counsel was given an opportunity at oral argument to address the taking of judicial notice and he did in fact make argument regarding that issue. As previously indicated, ultimately, the Court chose not to instruct the jury regarding venue.

---

[1] This Court recognizes that the Eleventh Circuit rejected the Government's contention that Males had waived the venue challenge by not preserving it in the district court. The Eleventh Circuit explained that "Males moved for a judgment of acquittal at the close of the evidence on the ground that 'the government has not proved each and every element of the indictment.'" The Eleventh Circuit found that the location of the offense was included as an a element alleged in the indictment. United States v. Males, 715 F.2d 568, 569 n. 1 (11th Cir. 1983). The instant case is distinguishable as Defendant filed a very specific and detailed motion for judgment of acquittal in which he outlined his arguments. At no time did Defendant argue that the Government failed to establish "each and every element of the offenses." Rather, Defendant focused on his alleged uncorroborated confession and the alleged lack of *corpus delicti* and double jeopardy as the bases for his motion.

11

The Court ORDERS as follows:

(1) Defendant's Renewed Motion for Judgment of Acquittal and/or Motion for Post-Verdict Judgment of Acquittal (Dkt. 76) is DENIED.

DONE AND ORDERED in Tampa, Florida this 20th day of June, 2005.

_____
WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE

Copies to
Counsel of Record
U.S. Attorney